UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

RODNEY E. HAYS,

      Plaintiff,

v.                                                                          Case No. 2:09-cv-01272

TOWN OF GAULEY BRIDGE, WV,
a West Virginia Municipal Corporation,
WILLIAM KINCAID, individually and
in his official capacity as Judge of the
Gauley Bridge Municipal Court,
SEAN WHIPKEY, individually and
in his official capacity as a Town of
Gauley Bridge Police Officer,
HEATH WHIPKEY, individually and
in his official capacity as a Town of
Gauley Bridge Police Officer, and
CHARLES BURKHAMER, individually and
in his official capacity as a Town of
Gauley Bridge Police Officer,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDATIONS

The Town of Gauley Bridge, West Virginia is located in Fayette County, West Virginia, and,

as of the 2000 census, had a population of 738 people.[1]  Given its rural location and small size, many

---

[1]  Darrell E. Holmes, ed., West Virginia Blue Book 2008 777 (2008).  The Town of Gauley
Bridge is a Class IV municipality.  W. Va. Code § 8-1-3 provides that

> all municipal corporations are hereby classified by population into four classes, as
> follows:
> (1) Every municipal corporation with a population in excess of fifty thousand
> shall be a Class I city;
> (2) Every municipal corporation with a population in excess of ten thousand but
> not in excess of fifty thousand shall be a Class II city;

drivers, as they cruise through its municipal limits, may view West Virginia's laws governing vehicle speed as merely advisory.  They do so at their peril: Gauley Bridge is, in fact, one of West Virginia's most aggressive speed traps.  In 2009 alone, Gauley Bridge collected $591,518 in various traffic fines; this figure accounts for more than sixty-five percent of municipal revenues.  Docket 65, ex. 1 at 56.  As of August 14, 2010, Gauley Bridge police officers had written 6,270 speeding tickets since 2000,[2] more than any West Virginia locale except Charleston and Parkersburg, populations 58,421 and 33,099,[3] respectively.[4]  In 2009 alone, 1,528 citations were issued.[5]

The case at bar raises the question of what process is due to a plaintiff who alleges various injuries arising from his receipt of one of those 1,528 tickets, and the court hearing for that ticket. The undersigned proposes that the presiding District Judge find that Hays's civil rights were violated and that  his damages are minimal.

*I. FACTS*

The facts are undisputed.  On August 12, 2009, Plaintiff received a speeding ticket inside the town limits of Gauley Bridge, West Virginia, on West Virginia State Route 16, a state owned highway.  He denies that he was speeding.  He was pulled over by Gauley Bridge Police Chief Sean

---

(3) Every municipal corporation with a population in excess of two thousand but
not in excess of ten thousand shall be a Class III city; and
(4) Every municipal corporation with a population of two thousand or less shall be
a Class IV town or village.

[2]  Gary A. Harki and Whitney Burdette, Watch Your Speed in Gauley Bridge, The Charleston Gazette, August 14, 2010, available at http://wvgazette.com/News/201008140354.

[3]  Note 1, supra, at 765 and 804, respectively.

[4]  Note 2, supra,

[5]  Id.

Whipkey, who relied upon a radar gun to determine that Plaintiff was in violation of the speed limit. On September 10, 2009, Plaintiff appeared before Gauley Bridge Municipal Judge William Kincaid regarding the ticket. This proceeding was closed to the public. Based on the radar gun evidence, Plaintiff was found guilty of speeding and fined $150. He appealed the conviction to the Circuit Court of Fayette County, necessitating his payment of the $150 fine and a $150 appeal bond. Prior to the adjudication of Plaintiff's appeal, the prosecuting attorney for Gauley Bridge, upon learning that Kincaid was ineligible to serve as judge, voluntarily dismissed the ticket, and refunded Plaintiff his $300. The reason for Kincaid's disqualification is that Kincaid was also employed as a classified civil servant by the West Virginia Division of Corrections. W. Va. Code § 29-6-20(e)(3),[6] precludes him from serving as a municipal judge.

## II. PLAINTIFF'S CLAIMS

Plaintiff filed suit against Gauley Bridge on November 20, 2009, alleging that the closed hearing violated his rights under the Sixth Amendment of the Constitution of the United States. [Doc. 1.] On June 24, 2010, the undersigned granted Plaintiff's motion to amend his complaint to include allegations against Kincaid, Sean Whipkey, and two additional Gauley Bridge police officers, Heath Whipkey, and Burkhamer. [Doc. 44.]

Plaintiff's Amended Complaint [doc. 45] is ambiguous as to which defendant is named in each count. Sometimes he identifies specific defendants; more often, he refers to "defendants." He divided the Amended Complaint between "state law claims" (three counts) and "federal law claims" (four counts). The undersigned has summarized his claims as found in paragraphs 7, 8 and 9:

---

[6] This provision states, in relevant part, that "no employee in the classified service shall...hold any paid public office other than as a paid poll clerk or worker."

3

Paragraph 7
Sean Whipkey, acting under color of state law, stopped and ticketed Plaintiff without probable cause.
The ticket was issued for a violation of the West Virginia Code, not a municipal ordinance.
Sean Whipkey used radar gun evidence at Plaintiff's trial, although Class IV towns do not have authority to use such evidence.
The Gauley Bridge Municipal Court lacks jurisdiction to enforce the West Virginia Code.
Sean Whipkey intentionally caused emotional distress to Plaintiff.
Sean Whipkey caused Plaintiff to suffer damages.

Paragraph 8
Gauley Bridge and Judge Kincaid, acting under color of state law, maliciously prosecuted Plaintiff without probable cause and without due process of law.
Plaintiff's trial was closed to the public.
Radar gun evidence was used as *prima facie* evidence against Plaintiff, despite Gauley Bridge's lack of authority to use such evidence.

Paragraph 9
Heath Whipkey and Charles Burkamer were present when Plaintiff's trial was closed to the public, thus participating in the violation of Plaintiff's rights and in the malicious prosecution of Plaintiff.

Id. at 5-7.

Plaintiff's state law claims are described as "constitutional tort" (Count One), negligence (Count Two), and outrageous conduct/intentional infliction [of emotional distress] (Count Three). Id. at 7-8.

Plaintiff's federal law claims are described as "illegal seizure, illegal detention, unlawful traffic stop, illegal speeding ticket, malicious prosecution, abuse of process" (Count One), "Monell liability cognizable under 42 U.S.C. 1983" (Count Two), "arbitrary and unreasonable state conduct pursuant to the Fourteenth Amendment cognizable under 42 U.S.C. 1983" (Count Three), and "unlawful conspiracy cognizable under 42 U.S.C. 1983 & 1985" (Count Four). Id. at 9-11.

Plaintiff claims he has suffered mental and emotional damages, lost earnings capacity, annoyance, inconvenience, loss of enjoyment of life, loss of property, humiliation, deprivation of

4

liberty, depression, and a damaged reputation.  Id. at 12.  He seeks compensatory and punitive damages, and demands a trial by jury.  Id.

### III.  Pending Motions

Plaintiff's Amended Complaint was filed on June 24, 2010.  On July 16, 2010, the Town of Gauley Bridge filed a motion for partial summary judgment on liability and for summary judgment on claims for damages other than nominal damages (of no more than $1.00). [Doc. 55.] Plaintiff promptly filed a response [doc. 57], received by the Clerk on the same day that the undersigned issued a Roseboro[7] notice [doc. 55].  Plaintiff chose not to file a supplemental response.  The Town's memorandum includes a request that the Court dismiss the claims against the individual defendants. [Doc. 56, at 17.] The request is moot, given the filing of a motion on behalf of the individual defendants.

On August 6, 2010, defendants Kincaid, Sean Whipkey, Heath Whipkey and Burkhamer filed a motion to dismiss or alternative motion for summary judgment. [Doc. 63.] Plaintiff filed a response [doc. 65], and the individual defendants filed a reply [doc. 66].

The undersigned ordered and received supplemental briefing and the filing of an affidavit concerning municipal court jurisdiction and Gauley Bridge's ordinances. [Doc. 67-71.]

### IV.  Town of Gauley Bridge's Motion [Doc. 55]

Based on paragraphs 7, 8 and 25 of Plaintiff's Amended Complaint, it appears that Plaintiff states four claims against the Town of Gauley Bridge: (1) it lacks jurisdiction to enforce the West Virginia Code on speeding; (2) it has a policy or custom of depriving citizens of their money and property by unlawfully using radar gun evidence against them; (3) it hired an ineligible person to

---

[7] Roseboro v.  Garrison, 528 F.2d 309 (4th Cir. 1975).

serve as municipal judge; and (4) it has a policy or custom of closing its trials to the public.  Broadly

viewed, Plaintiff complains that the Town of Gauley Bridge violated his right to due process of law

and a fair trial as assured by the Fifth and Fourteenth Amendments to the Constitution of the United

States.  Paragraph 25 reads:

> 25.  The above-described deprivation of the Plaintiff's constitutional rights
> were [sic; was] caused by implementation of policies, customs, and official acts of
> the Defendants the Town of Gauley Bridge to wit: the failure of said Defendants to
> know and administer state and constitutional laws relating to probable cause and due
> process for a traffic stop for a speeding violation, and probable cause, open and fair
> trial, right to a public trial, and due process to prosecute a citizen(s) for a speeding
> violation in a municipal court, the necessity of valid or admissible evidence and due
> process of law rights.  In all criminal prosecutions, all Court trials are to be open to
> the public. * * * Judge William Kincaid . . . [is] disqualifie[d] . . . to preside as judge
> at the Gauley Bridge Municipal Court.

[Doc. 45, at 10.]

Gauley Bridge's motion seeks summary judgment on liability as to all of Plaintiff's claims

except as to the trial which was closed to the public. [Doc. 55, at 2.]  As to that one claim, Gauley

Bridge contends that the Court should rule that Plaintiff's damages are nominal, limited to $1.00.

Id.

Title 42, U.S.C. § 1983 states that "[e]very person who, under color of any statute, ordinance,

regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes

to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the

deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be

liable to the party injured in an action at law, suit in equity, or other proper proceeding for

redress."

To obtain summary judgment, the moving party must show that there is no genuine issue as

to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

P. 56(c).  In considering a motion for summary judgment, the court will not "weigh the evidence and

determine the truth of the matter."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Instead, the court will draw any permissible inference from the underlying facts in the light most

favorable to the nonmoving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S.

574, 587-88 (1986).

Although the court will review all underlying facts and inferences in the light most favorable

to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from

which a reasonable juror could return a verdict in his favor."  Anderson, 477 U.S. at 256.  Summary

judgment is appropriate when the nonmoving party has the burden of proof on an essential element

of his case and does not make, after adequate time for discovery, a showing sufficient to establish

that element.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The nonmoving party must

satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his

position.  Anderson, 477 U.S. at 252.  Likewise, conclusory allegations or unsupported speculation,

without more, are insufficient to preclude the granting of a summary judgment motion.  See Felty

v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987);  Ross v. Comm'ns Satellite Corp.,

759 F.2d 355, 365 (4th Cir. 1985), abrogated on other grounds, 490 U.S. 228 (1989).

A local government cannot be sued under 42 U.S.C. § 1983 for injuries caused by its

employees or agents unless it is the "execution of a government's policy or custom, whether made

by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" that

causes the injury.  Monell v. Dep't of Soc. Serv., 436 U.S. 658, 694 (1978).  "To state a cause of

action against a municipality, a section 1983 plaintiff must plead (1) the existence of an official

policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right." Pettiford v. City of Greensboro, 556 F. Supp.2d 512, 530 (M.D.N.C. 2008) (citing Jordan ex rel. Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994)).  Municipal policy can be found in (1) written ordinances and regulations, (2) affirmative decisions of policymaking officials, or (3) omissions by policymaking officials "that manifest deliberate indifference to the rights of citizens."  Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999).  A municipal custom may arise "if a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" Id. (quoting Monell, 436 U.S. at 691).

### 1. Authority to Enforce the West Virginia Code on Speeding

Gauley Bridge argues that it did not violate Plaintiff's constitutional rights by issuing him a ticket for speeding. [Doc. 56, at 4.] It claims that the West Virginia Legislature expressly pronounced that a municipal officer has a duty to enforce the provisions of the West Virginia State Code, citing W. Va. Code § 8-14-3. Id. at 5-7.  Relying on State ex rel. Hill v. Smith, 172 W. Va. 413, 414 (1983), Gauley Bridge asserts that municipal court judges have the same powers as justices of the peace.  Id. at 7.

Plaintiff alleges that municipal police judges do not have the authority to adjudicate speeding violations under Article 8, Section 11 of the Constitution of West Virginia, and that he was harmed by this policy or custom of Gauley Bridge.  W. Va. Code § 17C-19-9 gives Justices of the Peace concurrent jurisdiction with other courts to enforce misdemeanor penalties.  According to Plaintiff, because Justices of the Peace no longer exist in West Virginia, municipal judges can only enforce municipal laws.

8

In pertinent part, Article VIII, § 11 of the West Virginia Constitution provides that

> [t]he Legislature may provide for the establishment in incorporated cities, towns or villages of municipal, police or mayors' courts, and may also provide the manner of selection of the judges of such courts.  Such courts shall have jurisdiction to enforce municipal ordinances, with the right of appeal as prescribed by law. Until otherwise provided by law, all such courts heretofore established shall remain and continue as now constituted, and with the same right of appeal, insofar as their jurisdiction to enforce municipal ordinances is concerned; but on and after January one, one thousand nine hundred seventy-seven, any other jurisdiction now exercised by such courts shall cease.

Additionally, West Virginia Code § 17C-19-9 provides that justices of the peace have concurrent jurisdiction to enforce misdemeanor traffic violations; pursuant to Section 50-1-17, justices of the peace are equivalent to magistrates. Section 50-2-3 gives magistrates jurisdiction of all misdemeanor offenses committed in the county.

The undersigned ordered additional briefing on the issue of the authority of the Gauley Bridge municipal court to adjudicate speeding violations. (# 67).  The Town referred the Court to Richardson v. Kimball, 176 W. Va. 24, 25 (1986).  In that case, which involved the public inspection of traffic records, the Supreme Court of Appeals noted that municipal courts are "vested with certain limited jurisdiction, including traffic complaints."  Gauley Bridge also argues that if a municipal court did not have jurisdiction to adjudicate traffic violations, then the requirements of W. Va. Code § 17C-19-8, which concerns traffic complaint records, would not be applicable.  In his twenty-page response to the Defendants' four page memorandum, Plaintiff, inter alia, distinguishes Kimball as a case about accessing court records, alleges that the Defendants only issue tickets to non-Gauley Bridge residents, and refers the Court to the Charleston Gazette article cited in footnote 1, supra.

On January 25, 2011, the undersigned ordered Gauley Bridge to file an affidavit explicitly detailing its municipal laws related to vehicular speeding.  (#70).  Gauley Bridge did so on January

27, 2011, filing an affidavit by Ms. Stephanie Fouts, the mayor of Gauley Bridge.  (#71).  The affidavit first referred the Court to Section 23-28 of the Gauley Bridge Municipal Code, which states that "[w]henever traffic-control signs are placed, erected or installed by competent authority, pursuant to the provisions of sections I7C-6-2,17C-6-3,17C-3a or l7C-6-5 of the Code of West Virginia, giving notice of a maximum or minimum speed limit, no driver of a vehicle shall drive in excess of such speed or slower than such minimum speed."  Section 23-28 is also referred to in Section 23-37, which sets the general speed limit for Gauley Bridge.  Section 23-37, which is titled "Speed limitations generally" further contains the footnote "[f]or corresponding state motor vehicle law, see W.Va. Code, Sec. 17C-6-1."  Reading Article VIII, Section 11 of the Constitution of West Virginia narrowly, municipal courts adjudicate issues of municipal law.  This does not necessarily preclude such courts from hearing violations of W. Va. Code § 17C-6-1, if the jurisdiction has taken appropriate action.   In this instance, the Gauley Bridge ordinances incorporated the relevant provisions of the West Virginia Code, thereby giving Gauley Bridge and its court jurisdiction over the speeding offense in the case at bar.[8]  Such incorporation is not uncommon; the municipal code of Charleston, West Virginia, adopted Section 17C-6-1 by reference.  Code of the City of Charleston, West Virginia, Section 114-6.[9]

---

[8]  The undersigned is not persuaded by the Town's arguments.  Smith concerned a Charleston, West Virginia ordinance, and notes that, under W. Va. Code §§ 8-10-1 & 2, a mayor, or the municipal/police court judge acting as his designee, has jurisdiction over violations of municipal law.  Kimball is of no assistance as well.   The holding of the Supreme Court of Appeals in that case was that, unless a statute provides for confidentiality, court records shall be open to public.  While recognizing in *dicta* that municipal courts can generally adjudicate speeding violations, the case provides no answer as to the specific authority of the Gauley Bridge Municipal Court to hear speeding violations.

[9]  Stating that "[a]ll the laws of the State, including but not limited to W. Va. Code Ch. 17, 17A, 17B, 17C, 17D, 17E, and all rules, regulations and orders made by the public service

10

The undersigned proposes that the presiding District Judge **FIND** that there is no genuine issue as to a material fact and that the municipal court of the Town of Gauley Bridge has the authority to adjudicate alleged violations of the West Virginia Code relating to vehicular speeding.

## 2. Admissibility of Radar Gun Evidence

There is no dispute that Gauley Bridge police officers used radar guns as a matter of policy or custom, and the radar gun evidence was used to convict Plaintiff of speeding. Moreover, it is apparent that Gauley Bridge adopted a municipal policy of receiving the bulk of its revenues from fines levied for speeding violations.

Gauley Bridge contends that it did not violate Plaintiff's constitutional rights through the use of a radar gun to enforce the speed limit. [Doc. 56, at 7-8.] It claims that W. Va. Code § 17C-6-7 permits radar gun evidence to be admitted at trial, "but the Code does not allow the court [to] use the evidence obtained to serve as prima facie evidence of speeding. The Legislature could have prohibited the use of radar by Class IV towns, but it did not. It simply limited the effectiveness of the evidence obtained through the use of radar." Id. at 8.

West Virginia Code § 17C-6-1 prohibits speed limit violations, and classifies them as misdemeanor offenses. On the day that Plaintiff was pulled over, Section 17C-6-7 stated that

> [t]he speed of a motor vehicle may be proved by evidence obtained by use of any device designed to measure and indicate or record the speed of a moving object by means of microwaves or reflected light, when such evidence is obtained by members of the department of public safety, by police officers of incorporated municipalities

---

commission, the state road commissioner, the department of motor vehicles, the department of public safety and the superintendent of public safety of the state, or any one or more of them, insofar as such rules, regulations and orders may relate or apply to traffic upon the public streets and highways of incorporated villages, towns and cities, and as they may be amended from time to time, shall be deemed, held to be and are made a part of this section; and any violation of such rules, regulations and orders shall be a violation of this section and constitute an offense.")

in classes one, two and three, as defined in chapter eight-a of this code, and by the sheriff and his deputies of the several counties of the state. The evidence so obtained shall be accepted as prima facie evidence of the speed of such vehicle.

However, this provision was recently amended. In pertinent part, it now reads that

[t]he speed of a motor vehicle may be proved by evidence obtained by use of any device designed to measure and indicate or record the speed of a moving object by means of microwaves or reflected light, when such evidence is obtained by members of the State Police, by police officers of incorporated municipalities in classes one, two and three, as defined in chapter eight-a of this code, *by police officers of incorporated class four municipalities except upon controlled access or partially controlled access highways*, and by the sheriff and his or her deputies. The evidence so obtained shall be accepted as prima facie evidence of the speed of the vehicle.

West Virginia 2010 Session Laws, 2010 Regular Session, Ch. 198 (S.B. No. 435) (emphasis added).

In pertinent part, when it was introduced on February 2, 2010, Senate Bill 435 initially stated that

Section 17C-6-7 would provide that

[t]he speed of a motor vehicle may be proved by evidence obtained by use of any device designed to measure and indicate or record the speed of a moving object by means of microwaves or reflected light, when such evidence is obtained by members of the State Police, by police officers of incorporated municipalities, and by the sheriff and his or her deputies.[10]

While the Senate Committee on the Judiciary changed other, non-pertinent parts of Senate

Bill 435's language, in an amendment proposed by the House of Delegates Committee on the

Judiciary on March 10, 2010, and adopted by the full House of Delegates on March 13, 2010, the

initial language of Senate Bill 435 was changed by retaining the qualifying language in the existing

statute "in classes one, two and three, as defined in chapter eight-a of this code," and then inserting

immediately after that portion the phrase "by police officers of incorporated class four municipalities

---

[10]S.B. 435, as introduced on February 2, 2010, <u>available at</u>
http://www.legis.state.wv.us/Bill_Status/bills_text.cfm?billdoc=SB435%20intr.htm&yr=2010&s esstype=RS&i=435

except upon controlled access or partially controlled access highways." However, the House of Delegates rejected an amendment offered by Delegate David Walker that would have also banned radar gun usage by Class IV municipalities on "any state road, any U. S. Highway" in addition to controlled access or partially controlled access highways.[11] In short, Senate Bill 435 was amended by the House of Delegates to prohibit use of evidence of speeding derived from radar guns by Class IV municipalities on certain highways. The Bill, as initially written, allowed use of radar gun evidence by all municipalities in all circumstances.

West Virginia Code § 8-14-3 provides that

> [t]he chief and any member of the police force or department of a municipality . . . shall have all of the powers, authority, rights and privileges within the corporate limits of the municipality with regard to the arrest of persons, the collection of claims, and the execution and return of any search warrant, warrant of arrest or other process, which can legally be exercised or discharged by a deputy sheriff of a county . . . . It shall be the duty of the mayor and police officers of every municipality . . . to aid in the enforcement of the criminal laws of the state within the municipality, independently of any charter provision or any ordinance or lack of an ordinance with respect thereto, and to cause the arrest of or arrest any offender and take him before a magistrate to be dealt with according to the law.

West Virginia Code § 8-14-3 gives Gauley Bridge police the authority to enforce West Virginia traffic laws; Plaintiff's assertions to the contrary on this matter are incorrect.

At the time of the incident at bar, the text of Section 17C-6-7 clearly provided that evidence from radar guns was inadmissible if it was obtained by a Class IV police department. The second sentence of Section 17C-6-7 stated that "the evidence so obtained shall be accepted as prima facie evidence of the speed of such vehicle." In that sentence, the clause "so obtained" refers to the first

---

[11] Journal of the House of Delegates, March 13, 2010, 2032-33. See also http://www.legis.state.wv.us/Bill_Text_HTML/2010_SESSIONS/RS/amendments/SB435%20H %20JUD%20AM%203-10%20_1%20adopted.htm

sentence of the statute. The only reasonable way to interpret "so obtained" is radar gun evidence obtained by police officers of Class I, II, and III municipalities. Gauley Bridge's argument that radar gun use, while not prima facie evidence, still possessed probative value is belied by the 2010 amendment to Section 17C-6-7. If the earlier version of Section 17C-6-7 allowed the police departments of Class IV municipalities to introduce radar gun evidence, then there would have been no need for the legislative to amend the statute by adding "by police officers of incorporated class four municipalities except upon controlled access or partially controlled access highways." Further, the fact that the amended statute precludes the police departments of Class IV municipalities from proving vehicular speeding on certain highways via radar gun evidence also demonstrates that the Defendants' "probative evidence" interpretation is without merit.[12]

Stated differently, the first sentence of § 17C-6-7 (before the recent amendment) allowed the introduction of radar gun evidence so long as such evidence is obtained by specifically identified police officers (excluding Class IV municipal police); the second sentence sets forth the weight of such evidence. There was no provision in State law in 2009 which allowed the introduction of radar gun evidence obtained by a Class IV municipal police officer.[13]

The undersigned proposes that the presiding District Judge **FIND** that there is no genuine issue as to any material fact, that the Town of Gauley Bridge, in 2009, had policies and customs of

---

[12] The undersigned notes that while Plaintiff may have acknowledged the "probative evidence" argument at deposition, it is the Court that ultimately determines the law.

[13] See also Clendenin v. Gross, case no. 98-M-AP-43 (Circuit Court of Kanawha County, West Virginia) (Irene C. Berger, J.) (ruling from the bench on January 11, 1999, that the text of Section 17C-6-7 did not allow the police departments of Class IV municipalities to introduce radar gun evidence; the case was voluntarily dismissed by the Town of Clendenin on March 16, 2000, after the Supreme Court of Appeals of West Virginia declined to review a certified question on this issue on January 26, 2000).

using radar guns to catch and ticket purported speeders, introducing the radar gun readings into evidence in its municipal court contrary to State law, and of obtaining the majority of municipal revenues from fines generated by traffic infractions.  The presiding District Judge should further **FIND** that Gauley Bridge's policies and customs violated Plaintiff's right to due process of law.

### 3.  Eligibility of William Kincaid to Serve as Municipal Judge

The memorandum filed by Gauley Bridge argues on behalf of defendant Kincaid and asserts judicial immunity; it is not directed at the alleged custom and policy of Gauley Bridge to hire a person as municipal judge who is ineligible to serve. [Doc. 56, at 9-10.]  Plaintiff contends that "Gauley Bridge has had a history of hiring Town officials, whose character is questionable, whose morals and ethics are questionable and their knowledge and skills are in question." [Doc. 57, at 11.] Plaintiff incorporates by reference the various exhibits he obtained from Thornton Cooper concerning William Kincaid's eligibility to serve as municipal judge.  Id., doc. 12, exhibits.  Mr. Kincaid is not a lawyer; his ineligibility, which is uncontested, is attributable to his job as a classified employee of the West Virginia Division of Corrections.  W. Va. Code § 29-6-20(e)(3).

Plaintiff has sued William Kincaid in both his official and his individual capacity.  The motion for summary judgment filed on his behalf will be addressed *infra*.  To establish municipal liability for an unconstitutional custom or practice by the ineligible municipal judge, Plaintiff must show (1) that Gauley Bridge had "'actual or constructive knowledge' of the custom and usage by its responsibility policymakers," and (2) that there was a failure by those policymakers, "'as a matter of specific intent or deliberate indifference,' to correct or terminate the improper custom and usage." Randall v. Prince George's Cnty., Md., 302 F.3d 188, 210 (4th Cir. 2002) (quoting Spell v. McDaniel, 824 F.2d 1380, 1391 (4th Cir. 1987)).  With respect to the Town of Gauley Bridge's

hiring of William Kincaid, Plaintiff has presented no evidence that the Town knowingly and intentionally hired an ineligible person to serve as municipal judge, or that, upon learning of his ineligibility, the Town purposefully retained him in that position.

The undersigned proposes that the presiding District Judge **FIND** that there is no genuine issue as to any material fact, and that Plaintiff has failed to show that the responsible policymakers of the Town of Gauley Bridge, in 2009, had actual or constructive knowledge that they had hired an ineligible person to serve as municipal judge.

### 4. Trial Closed to the Public

Gauley Bridge's memorandum appears to concede that Plaintiff's Sixth Amendment right to a public trial was violated. "The undisputed facts show that the Plaintiff cannot establish genuine issues of material fact on any of his alleged constitutional violations other than his claim under the Sixth Amendment. Under his Sixth Amendment claim he cannot establish actual damages." [Doc. 56, at 16-17.] The undersigned will address Plaintiff's damages at the end of this document.

### 5. State Law Claims

Plaintiff's statement of his state law claims (constitutional tort, negligence, outrageous conduct/intentional infliction of mental and emotional distress) are conclusory and vague. The undersigned addresses Plaintiff's state law claims as to all defendants below at pages 22-25.

### Recommendation

It is respectfully recommended that the Town of Gauley Bridge's motion for summary judgment be:

1. Granted as to Plaintiff's claim regarding the Town's authority to enforce the West Virginia Code with respect to vehicular speeding;

2.   Denied as to Plaintiff's claim that the Town of Gauley Bridge had a custom and policy of unlawfully admitting radar gun evidence;

3.   Granted as to Plaintiff's claim that the Town of Gauley Bridge had a custom and policy of hiring an ineligible person to serve as municipal court judge;

4.   Denied as to Plaintiff's claim that the Town of Gauley Bridge had a custom and policy of conducting non-public trials;

5.   Granted as to Gauley Bridge's position that only nominal damages may be awarded against it.

## V.  Individual Defendants' Motion [Doc. 63]

The individual defendants' motion to dismiss Plaintiff's Amended Complaint or alternative motion for summary judgment incorporates the motion for summary judgment filed by the Town of Gauley Bridge. [Doc. 63, at 2.] The standard of review for summary judgment motions is set forth above at pages 6 through 7.  The standard of review for motions to dismiss for failure to state a claim upon which relief can be granted is significantly different.

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must assume "the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000).  When considering a motion to dismiss, a court "accept[s] as true all well-plead allegations and view[s] the complaint in the light most favorable to the plaintiff." Sec. of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir.2007); see also Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir.1991).  "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Ashcroft v. Iqbal, --- U.S. ---, ---, 129 S. Ct. 1937, 1950 (2009).  "To survive a

Rule 12(b)(6) motion to dismiss, the facts alleged must be enough to raise a right to relief above the speculative level and must provide enough facts to state a claim to relief that is plausible on its face." Robinson v. Am. Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)) (internal quotations omitted).   "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (internal citations omitted); see also Iqbal, --- U.S. ---, ---, 129 S. Ct. at 1949 ( stating that "the Rule does call for sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").  The undersigned will address Plaintiff's claims against the individual defendants by topic and by defendant.

### 1.   Seizure/Authority to Enforce the West Virginia Code on Speeding (S. Whipkey)

Plaintiff alleges that defendant Sean Whipkey lacked probable cause for the traffic stop because he contends that Gauley Bridge police officers are not authorized to enforce State and local laws relating to vehicular speeding. [Doc. 45, at 5-6, 9.]  Based on the analysis set forth above at pages 8 through 10, the undersigned proposes that the presiding District Judge **FIND** that police officers of the Town of Gauley Bridge are authorized to enforce State and local laws relating to vehicular speeding, and that defendant Sean Whipkey did not violate Plaintiff's Fourth Amendment rights by stopping and ticketing him for speeding.

### 2.   Due Process/Admissibility of Radar Gun Evidence (S. Whipkey, Kincaid)

Plaintiff alleges that defendants Sean Whipkey and William Kincaid violated his right to due process of law by offering and admitting into evidence the radar gun reading which purportedly

indicated that Plaintiff had exceeded the speed limit. Id.  Based on the analysis set forth above at pages 11 through 14, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's right to due process of law was violated by defendants Sean Whipkey and William Kincaid when the radar gun evidence was used against Plaintiff at his trial in violation of West Virginia Code § 17C-6-7.  The ticket has been dismissed; accordingly it is not necessary to determine whether defendant Sean Whipkey had other, admissible evidence which would be probative of whether Plaintiff was speeding.

### 3.  Eligibility of William Kincaid/Judicial Immunity

The defendants' motion asserts that defendant Kincaid is immune from liability "because (1) he was acting in the capacity of a municipal judge, . . . (2) his actions in regards to the Plaintiff were judicial acts; (3) the Plaintiff is seeking monetary damages, not injunctive relief." [Doc. 64, at 11.]

Plaintiff responds that Kincaid was ineligible to serve and thus acted in the absence of jurisdiction. [Doc. 65, at 14.] He contends that Kincaid's actions were done maliciously and corruptly, under color of state law, in bad faith, and with callous indifference to Plaintiff's constitutional rights.  Id., at 14-15.

The defendants' reply contends that "the municipal court had jurisdiction over claims based on a violation of W. Va. Code § 17C-6-1.  Therefore, Judge Kincaid is entitled to judicial immunity." [Doc. 66, at 9.]

It is undisputed that William Kincaid, a classified employee of the West Virginia Division of Corrections, was prohibited by West Virginia Code § 29-6-20(e)(3) from being municipal judge of the Town of Gauley Bridge.  The Constitution of West Virginia, Art. VIII, § 11, gives the legislature authority "to provide the manner of selection of the judges of such [municipal] courts."

19

West Virginia Code § 8–10-2 requires that prospective municipal judges undergo a criminal background check, have no conviction of a felony or specified misdemeanor, and (if not a lawyer) attend training.  Municipal judges are paid a salary.  Const. of W. Va., Art. VIII, § 11.

It appears that the issue of whether an ineligible judicial officer is entitled to judicial immunity is novel; the undersigned has found no case addressing such a situation.  The Supreme Court of the United States recognized the doctrine of judicial immunity in Bradley v. Fisher, 80 U.S. (13. Wall.) 335, 351 (1872), writing: "[J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly."[14]

> A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter.  Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible.  But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend.

80 U.S. at 351-52.  The Court provided examples: if a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be entitled to immunity.  Id. at 352.  If a judge of a criminal court should convict a person of a nonexistent crime, he would be acting in excess of his jurisdiction and would be immune. Id.

---

[14] Municipal courts are not vested with superior or general jurisdiction.  Nonetheless, municipal court judges are entitled to the protection of judicial immunity.  Dean v. Shirer, 547 F.2d 227, 231 (4th Cir. 1976).

In <u>Pierson v. Ray</u>, 386 U.S. 547, 554-55 (1967), the Court applied judicial immunity to actions brought under 42 U.S.C. § 1983 to recover for alleged deprivation of civil rights.  In <u>Stump v. Sparkman</u>, 435 U.S. 349 (1978), another § 1983 case, the Court commented that "the doctrine of judicial immunity is thought to be in the best interests of 'the proper administration of justice . . . [, for it allows] a judicial officer, in exercising the authority vested in him [to] be free to act upon his own convictions, without apprehension of personal consequences to himself."  435 U.S. at 363 (quoting <u>Bradley</u>, 13 Wall., at 347).  Justice Stewart's dissent (joined by Justices Marshall and Powell) quoted from the petitioners' brief which spoke of "an aura of deism which surrounds the bench . . . essential to the maintenance of respect for the judicial institution."  The dissent commented that "if aura there be, it is hardly protected by exonerating from liability such lawless conduct as took place here.  And if intimidation would serve to deter its recurrence, that would surely be in the public interest."  435 U.S. at 369.

William Kincaid's ineligibility to serve as municipal judge of Gauley Bridge eliminated his authority to take any judicial acts.  By operation of West Virginia law, he was no more qualified to serve as municipal judge than a felon.  He usurped the authority to act as municipal judge and ruled in the clear absence of jurisdiction over any matter that came before him.  Defendant Kincaid functioned in violation of West Virginia law and he should not be exonerated from liability.  It is in the best interest of the proper administration of justice that an ineligible judicial officer should be denied the protection of judicial immunity.  The undersigned proposes that the presiding District Judge **FIND** that defendant Kincaid is not entitled to judicial immunity.

### 4.  Trial Closed to the Public (Whipkeys, Burkamer, Kincaid)

There is no dispute that Plaintiff's trial was closed to the public in violation of his Sixth

Amendment rights.  As the person who presided over the trial, defendant Kincaid should be liable to Plaintiff for nominal damages.  Plaintiff alleges in his Amended Complaint that defendants Burkamer, Sean Whipkey and Heath Whipkey were present at the trial and insured that the proceedings were closed.  At this stage of the proceedings, the undersigned is unable to determine the roles played by the police officers as to this matter.  The undersigned proposes that the presiding District Judge **FIND** that Plaintiff has stated a claim upon which relief can be granted as to the individual defendants.

### 5.  Conspiracy

Plaintiff's Amended Complaint states as follows: "Based on the above facts and after a reasonable opportunity for discovery the Plaintiff will establish that the Defendants unlawfully conspired to deprive the Plaintiff of his constitutionally protected rights as more fully described above." [Doc. 45, ¶ 29, at 11.] No other information is provided.

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must prove

(1) a conspiracy of two or more persons (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

Simmons v. Poe, 47 F.3d 1370, 1376-77 (4th Cir. 1995).

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted because it is devoid of any factual allegations regarding the existence of a conspiracy, much less one motivated by specific, class-based, invidiously discriminatory animus.  Plaintiff's generalized assertion that the Gauley Bridge police officers ticket only those who do not permanently reside in Gauley Bridge is simply insufficient.

### 6.  State Law Claims

Plaintiff's state law claims (constitutional tort, negligence, outrageous conduct/intentional infliction of mental and emotional distress) are conclusory and vague.  He alleges that he was illegally seized, denied due process, and denied an open trial, in violation of Article III, Sections 6, 10, and 17 of the Constitution of West Virginia, respectively.  He further alleges that all the defendants were negligent, acted in bad faith, for an improper purpose, and thereby breached a duty owed to him. [Doc. 45, at 8.]  Finally, Plaintiff alleges the tort of intentional infliction of emotional distress.  With respect to the alleged constitutional torts, the undersigned has already made the proposed findings that Gauley Bridge police had the authority to enforce West Virginia Code-based speeding violations, that the Gauley Bridge municipal judge was ineligible to preside, and that the due process rights of Plaintiff were violated when defendant Kincaid adjudicated his case and admitted the radar gun evidence.  These claims need not be addressed further.

Negligence

Plaintiff alleges that the defendants were negligent and breached a duty owed to him, in that they did not meet the reasonable care standard, and acted in bad faith, for an improper purpose. [Doc. 45, at 8.]  The defendants contend that the claims against them are futile and without merit. [Doc. 56, at 10; doc. 64, at 12.]  In addition to their previous arguments, they argue that Plaintiff has failed to demonstrate the necessary elements of a negligence claim.  [Doc. 45, at 11; doc. 64, at 12-15.]  Defendants Heath Whipkey and Burkhamer also state that the claims against them are barred by the public duty doctrine, in that their duty to ensure an open court hearing was a duty that ran to the public at large, and not particularly to Plaintiff.  Id.  Because Plaintiff has not alleged a special relationship between himself, on the one hand, and defendants Heath Whipkey, and Burkhamer, on

23

the other hand, the latter two argue that the claims against them must be dismissed.  According to Plaintiff, however, the defendants conspired to violate his rights. [Doc. 65, at 5-7.]

West Virginia Code § 29-12A-4(c)(2) states that "[p]olitical subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment."  Exceptions to this provision are given in Section 29-12A-5(a).  Section 29-12A-5(a)(5) states that a political subdivision is immune from liability if a loss or claim results from ". . . the method of providing police, law enforcement or fire protection." The Supreme Court of Appeals of West Virginia held that this phrase refers to "the decision-making or the planning process in developing a governmental policy, including how that policy is to be performed."  Syllabus Point 4, Smith v. Burdette, 211 W. Va. 477 (2002).  However, it "does not provide immunity to a political subdivision for the negligent acts of the political subdivision's employee performing acts in furtherance of a method of providing police, law enforcement or fire protection."  Id. at Syllabus Point 5.  Section 29-12A-5(a)(5) is also "coextensive with the common-law rule not recognizing a cause of action for the breach of a general duty to provide, or the method of providing, such protection owed to the public as a whole.  Lacking a clear expression to the contrary, that statute incorporates the common-law special duty rule and does not immunize a breach of a special duty to provide, or the method of providing, such protection to a particular individual."  Syllabus Point 1, Walker v. Meadows, 206 W. Va. 78 (1999).  Generally, "[t]he duty imposed upon a governmental entity is one owed to the general public, and unless the injured party can demonstrate that some special relationship existed between the injured person and the allegedly negligent entity, the claim is barred."  Jeffrey v. West Virginia Dep't of Pub. Safety, Div. of Cor., 198 W. Va. 609, 614 (1996).  "Where the public duty doctrine would apply, there is simply no duty

24

and therefore no need to inquire as to the existence of immunity.  The public duty doctrine is not a "doctrine of governmental immunity but one of tort, based on the initial question applicable to any negligence action, that is, whether the defendant owes the plaintiff any judicially cognizable duty." Walker, 206 W. Va. at 83.  To establish the existence of a special relationship, a plaintiff must demonstrate "(1) an assumption by the local governmental entity, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the local governmental entity's agents that inaction could lead to harm; (3) some form of direct contact between the local governmental entity's agents and the injured party; and (4) that party's justifiable reliance on the local governmental entity's affirmative undertaking."  Id. at Syllabus Point 2.

Further, Section 29-12A-5(b) states that an employee of a political subdivision is immune from liability unless "(1) [h]is or her acts or omissions were manifestly outside the scope of employment or official responsibilities; (2) [h]is or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) [l]iability is expressly imposed upon the employee by a provision of this code."

The undersigned proposes that the presiding District Judge **FIND** that the Amended Complaint fails to state a claim upon which relief can be granted that the defendants owed Plaintiff a duty with respect to the incidents relating to his speeding ticket or that the defendants acted maliciously or in bad faith.

Intentional Infliction of Emotional Distress

"In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress, four elements must be established. It must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that

the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it." Syllabus Point 3, <u>Travis v. Alcon Laboratories, Inc.</u>, 202 W. Va. 369 (1998).

The undersigned proposes that the presiding District Judge **FIND** that the Amended Complaint fails to state a claim for intentional infliction of emotional distress upon which relief can be granted. Plaintiff has failed to meet his obligation to provide more than labels and conclusions; his formulaic recitation of the elements of the cause of action of intentional infliction of emotional distress will not suffice and he has not provided sufficient factual matter that his claim is plausible on its face.

### Recommendation

It is respectfully recommended that the individual defendants' motion to dismiss or alternative motion for summary judgment [doc. 63] be ruled upon in the following manner:

<u>Grant the motion to dismiss for failure to state a claim upon which relief can be granted as to</u>:

1. State law claim based on negligence and bad faith (all defendants, including Town of Gauley Bridge); and

2. State law claim based on outrageous conduct/intentional infliction of emotional distress (all defendants, including Town of Gauley Bridge);

3. 42 U.S.C. § 1985(e) claim of conspiracy;

<u>Grant the defendants' motion for summary judgment as to</u>:

A. Seizure/authority to enforce the West Virginia Code on speeding; and

B.  Authority of the municipal court of the Town of Gauley Bridge to adjudicate alleged violations of the West Virginia Code on speeding; and

Otherwise deny it.

## Qualified Immunity

When defendants in civil rights cases invoke qualified immunity, federal courts apply the qualified immunity principles set forth in Pearson v. Callahan, --- U.S. ---, ---, 129 S. Ct. 808, 818 (2009); Saucier v. Katz, 533 U.S. 194, 200-02 (2001), Anderson v. Creighton, 483 U.S. 635, 639-641 (1987), Harlow v. Fitzgerald, 457 U.S. 800, 817-819 (1982), and many other cases.  Government officials performing discretionary functions are generally protected from civil damages liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. at 818; Taylor v. Waters, 81 F.3d 429, 433 (4th Cir. 1996).  However, "unlike various government officials, municipalities do not enjoy immunity from suit—either absolute or qualified—under § 1983."  Berkley v. Common Council of City of Charleston, 63 F.3d 295, 296 (4th Cir. 1995) (quoting Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 166 (1993)).

In a case in which the defense of qualified immunity is raised, the court looks to the evidence before it in the light most favorable to the plaintiff and asks whether the facts alleged show the officer's conduct violated a constitutional right, and whether the right was clearly established.  Saucier, 533 U.S. at 201.  It is up to the sound discretion of judges to decide which of these two questions should be addressed first.  Pearson, 129 S. Ct. at 818.  The determination of whether an action violated clearly established law turns on the "'objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'"  Id., at 822

27

(quoting <u>Wilson v. Layne</u>, 526 U.S. 603, 614 (1999)).

The Sixth Amendment to the Constitution of the United States guarantees that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  In <u>Kloper v. North Carolina</u>, 386 U.S. 213, 223 (1967), the Supreme Court applied the Sixth Amendment speedy trial provision to State trials via the Due Process Clause of the Fourteenth Amendment.  In <u>Waller v. Georgia</u>, 467 U.S. 39, 48 (1984), the Supreme Court reviewed the cases on the importance of trials being open to the public, and applied the Sixth Amendment to suppression hearings.  Thus, the right to a public trial was well established for many years prior to Plaintiff's speeding ticket and no reasonable judicial or police officer should have thought otherwise in 2009.

The undersigned proposes that the presiding District Judge **FIND** that defendants Sean Whipkey and William Kincaid are not entitled to qualified immunity for violating Plaintiff's right to due process of law and a fair trial by convicting Plaintiff of speeding at a closed trial, using evidence which is statutorily inadmissible.  Due to lack of facts relating to the participation by defendants Heath Whipkey and Charles Burkamer, the undersigned is unable to propose a finding as to them.

### Damages

The Town of Gauley Bridge asserts that Plaintiff's damages are merely nominal, limited to $1.00, and ask the Court to grant it summary judgment on this issue. [Doc. 56, at 12-16.] The individual defendants have joined in Gauley Bridge's motion. [Doc. 64, at 2.]

Plaintiff responds that both compensatory and punitive damages should be awarded to deter and to punish Gauley Bridge "for having their unconstitutional policies and customs." [Doc. 57, at 16-19.] He claims that he is entitled to compensatory damages for past, present and future lost

earnings capacity, damaged reputation, depression, loss of enjoyment of life, annoyance, aggravation and inconvenience, and psychological and emotional distress, plus punitive damages. [Amended Complaint, doc. 45, at 12.]

"Nominal damages, when available, are designed to vindicate legal rights 'without proof of actual injury.'  An award of merely nominal damages means that a plaintiff has not shown 'actual injury.'" Doe v. Chao, 306 F.3d 170, 181 (4th Cir. 2002) (quoting Carey v. Piphus, 435 U.S. 247, 266 (1978)).  The Supreme Court of Appeals of West Virginia has recognized the availability under state law of an award of nominal damages to plaintiffs who have been wronged yet have not suffered a concrete injury.  See, e.g., Syllabus Point 10, Hairston v. General Pipeline Const., Inc., No. 35525, --- S.E.2d.----, 2010 WL 4674306 (Nov. 18, 2010); Syllabus Point 3, Rohrbaugh v. Wal-Mart Stores, Inc., 572 S.E.2d 881 (2002).  Punitive damages are also authorized in cases "if the defendant's conduct is determined to be willful, wanton, reckless, or malicious." Hairston, id.

The Supreme Court of the United States has issued two decisions addressing punitive damages in civil rights cases, City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981), and Smith v. Wade, 461 U.S. 30 (1983).  Some cases have been published which conclude that these decisions are best understood as holding that punitive damages may not be awarded against a municipality or a public official acting in his/her official capacity (City of Newport), but they may be awarded against a public official acting in his/her individual capacity (Smith v. Wade).  Young Apartments, Inc. v. Town of Jupiter, FL, 529 F.3d 1027, 1047 (11th Cir. 2008); Martinez-Velez v. Rey-Hernandez, 506 F.3d 32, 39 n.3 (1st Cir. 2007); New Windsor Volunteer Ambulance Corps, Inc. v. Meyers, 442 F.3d 101, 122 (2d Cir. 2006); Ivani Contracting Corp. v. City of New York, 103 F.3d 257, 262 (2d Cir. 1997); Richardson v. Leeds Police Dep't, 71 F.3d 801, 803 n.2 (11th Cir. 1995);

Planned Parenthood Ass'n/Chicago Area v. Chicago Transit Authority, 767 F.2d 1225, 1233-34 (7th Cir. 1985); Tasker v. Moore, 738 F. Supp. 1005, 1015-16 (S.D. W. Va. 1990).  The undersigned is persuaded by this reasoning, noting that an award of punitive damages against a municipality or its officer acting in his/her official capacity punishes the innocent taxpayer, not the wrongdoer.

While Plaintiff claims that he has suffered a litany of mental and emotional damages, lost earnings capacity, annoyance, inconvenience, loss of enjoyment of life, loss of property, humiliation, deprivation of liberty, depression, and a damaged reputation, he has failed to present affidavits, exhibits, or excerpts from depositions to establish his damages.  The Town of Gauley Bridge has quoted from Plaintiff's deposition to demonstrate an absence of testimony or exhibits in support of compensatory damages. [Doc. 56, Ex. A.]  Plaintiff has presented only his self-serving and conclusory statements, which are not sufficient to survive summary judgment.

The undersigned proposes that the presiding District Judge **FIND** that Plaintiff is entitled to nominal damages.  While Plaintiff is not entitled to attorney's fees due to the fact that he is a *pro se* litigant, he is, pursuant to Fed. R. Civ. P. 54(d)(1), 28 U.S.C. § 1920, and 42 U.S.C. § 1988, entitled to fees and costs "as long as no special circumstances render an award unjust."  Clark v. Sims, 894 F. Supp. 868, 870 (D. Md. 1995) (citing Newman v. Piggie Park Enter., Inc., 390 U.S. 400, 402 (1968)).  An award of nominal damages does render a plaintiff a prevailing party.  Farrar v. Hobby, 506 U.S. 103, 111-12 (1992).

### Recommendation

It is respectfully **RECOMMENDED** that the defendants' motion for summary judgment for damages other than nominal damages [doc. 55] be granted.

The parties are notified that this "Proposed Findings and Recommendation" is hereby

**FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir.1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir.1985); United States v. Schronce, 727 F.2d 91 (4th Cir.1984). Copies of such objections shall be provided to the presiding District Judge.

The Clerk is directed to file this Proposed Findings and Recommendation, mail a copy to Plaintiff and transmit it to counsel of record.

February 16, 2011
        Date

Mary E. Stanley
United States Magistrate Judge